# United States District Court
# For The District of Columbia

**United States of America,**

**v.**

**Jose Lagunas,**

**Defendant.**

**Case No. 25-mj-178 (MJS)**

## Motions to Dismiss with Prejudice and for Expungement

### I. Introduction

Jose Angel Lagunas (they/them), through undersigned counsel, respectfully moves this Court to dismiss this case with prejudice and to order their records expunged. Jose Lagunas is a Teach for America public school teacher at Paul Public Charter School, where they teach 11th and 12th grades, who was charged in both D.C. Superior and U.S. District Courts for spitting. This alleged spitting occurred when federal and other officers were patrolling Columbia Heights Metro Station; had their faces and heads covered to instill fear and stifle dissent; and, with this show of force, surrounded an individual and arrested him for failing to pay his fare. Residents jeered and protested and then celebrated when the officers retreated, some in unmarked trucks and vans. For his alleged spitting, Jose Lagunas was charged with the federal offense of assaulting a police officer during or on account of his official duties in this Court, only for the government to ask to dismiss this case without prejudice.

Given that the "Government offers no compelling reasons—indeed, hardly any reasons at all—for why it should be allowed to retain the option to stop and restart [Jose Lagunas's] federal

prosecution," and the interests of justice are clearly in their favor, dismissal with prejudice and expungement are wholly appropriate and just. *Accord* Mem. Op. at 3, *United States v. Beidleman*, Case No. 25-cr-270 (SLS), ECF No. 23 (Oct. 1, 2025) (dismissing § 111(a) charge *with* prejudice).

**II. The complaint should be dismissed with prejudice under Rule 48.**

In recent weeks, a troubling pattern has emerged. Faced with weak cases and concerning arrests—and failing in several to even secure an indictment before a federal grand jury—the government has repeatedly moved to dismiss cases without prejudice, for the express purpose of pursuing these weak cases in a more advantageous venue. A Magistrate Judge on this Court recently noted that his staff had counted at least 11 assault on officers cases the government has moved to dismiss since the federal surge: "It seems like one takeaway could be the government is filing these charges and investigating them afterward," the Court stated on the record. *See* Jordan Fischer, *Judge says US Attorney Pirro's office has dismissed 11 felony cases over the past month,* WUSA9 (Sep. 16, 2025).[1] Continuing prosecution in D.C. Superior Court while reserving for itself the power to recharge Jose Lagunas in federal court should this become its preferred forum later—perhaps when a new grand jury is empaneled given the current grand jury's decisions—constitutes harassment and is contrary to the manifest public interest. Instead of dismissing without prejudice, as the government requested, this Court should dismiss this case with prejudice to protect Jose Lagunas and the integrity of the charging process.

Federal Rule of Criminal Procedure 48(a) "allow[s] courts to consider the 'public

[1] Available at https://www.wusa9.com/article/news/crime/thiscreates-some-real-concerns-judge-says-us-attorney-pirros-office-has-dismissed-11-felony-casesover-the-past-month-matthew-sharbaugh-pichon-nguyen/65-7b122562-072d-4067-8c6c4e87ad0421d4 (last accessed Oct. 2, 2025).

interest, fair administration of criminal justice and preservation of judicial integrity'" in determining whether to grant a dismissal without prejudice. *United States v. Poindexter*, 719 F. Supp. 6, 10 n.10 (D.D.C. 1989) (quoting *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir. 1988)); *see also United States v. Borges*, 153 F. Supp. 3d 216, 219 (D.D.C. 2015) (same). The Court may reject a government motion for dismissal without prejudice and instead order a dismissal with prejudice. *Poindexter*, 719 F. Supp. at 10. Indeed, courts have an independent obligation to ensure that dismissal without prejudice would not prejudice a defendant.

Though there is "a strong presumption in favor of a no-prejudice dismissal, the ultimate decision in that regard depends upon the purpose sought to be achieved by the government and its effect on the accused." *Id.* "The primary reason for the 'leave of court' requirement [in Rule 48(a)] is to 'protect a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution.'" *United States v. Pitts*, 331 F.R.D. 199, 202 (D.D.C. 2019) (quoting *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973)); *see also Rinaldi v. United States*, 434 U.S. 22, 30 n.15 (1977) (same).

Finding that a defendant would be subject to harassment through dismissal without prejudice does not require a showing of bad faith on the part of the government. "[T]he question is not whether the government was acting in bad faith, but rather whether the actions of the government objectively amounted to harassment." *Pitts*, 331 F.R.D. at 203; *see also United States v. Salinas*, 693 F.2d 348, 353 (5th Cir. 1982) (indictment should have been dismissed with prejudice where government moved to dismiss due to dissatisfaction with selected jury). "A court can determine whether the potential for harassment renders a dismissal with prejudice in

the public interest by looking at the *purpose* of the government's dismissal and the *effect* it has on the defendant." *United States v. Adams*, 777 F. Supp. 3d 185, 217 (S.D.N.Y. 2025) (quoting *United States v. Madzarac*, 678 F. Supp. 3d 42, 46 (D.D.C. 2023) (emphasis in *Madzarac*)). If dismissal would result in harassment to the defendant, dismissal without prejudice will *never* be in the public interest because "[i]t is obvious that the public interest is not served by harassing the defendant." *Salinas*, 693 F.2d at 351 n.15; *see also United States v. Omni Consortium, Inc.*, 525 F. Supp. 2d 808, 812 n.3 (W.D. TX 2007) (quoting *Salinas* favorably).

Dismissal of a complaint for the purpose of re-bringing it at a time or place more favorable to the government is precisely the type of conduct that Rule 48(a) was designed to prevent. *Rinaldi*, 434 U.S. at 29 n.15 (describing protecting the defendant against "prosecutorial harassment," for instance, "charging, dismissing, and recharging"); *see also Beidleman* Mem. Op. at 3. The leave of court requirement included in Rule 48(a) has been characterized as a "power to check power," *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975)—an "essential check on potential misconduct by the executive branch," *United States v. James*, 861 F. Supp. 151, 155 (D.D.C. 1994). "To ensure that the government's request for dismissal of criminal charges 'sufficiently protects the public,' the government may be required to submit 'a statement of reasons or underlying factual basis,' which must be 'substantial' to justify the dismissal and not 'a mere conclusory statement.'" *United States v. Mangia*¸ 2025 WL 266493 (D.D.C. Jan. 22, 2025) (Howell, J.) (quoting *Ammidown*, 497 F.2d at 620).

Here, the government has provided no "sufficient basis for avoiding dismissal with prejudice." *Poindexter*, 719 F. Supp. at 11. The government's sole argument for dismissal without prejudice is this: "Here, after careful review, the government has determined that the interests of

justice favor prosecution in D.C. Superior Court over continued federal prosecution." ECF No. 3 at 2. But "a bare 'because I want to' assertion is [not] a sufficient explanation to permit the Government to keep a foot in the federal courthouse door." *Beidleman* Mem. Op. at 7 ("it is not at all clear why the Government's ability to more efficiently obtain a just outcome in D.C. Superior Court should permit the Government to retain the option of later returning to federal court to restart federal proceedings against Mr. Beidleman."). That the government believes it is in the interests of justice to pursue this case in Superior Court says nothing about the propriety of dismissing *this* case without prejudice. "If anything, it seems to suggest the opposite—that dismissal with prejudice would not meaningfully harm the public's interest in seeing that justice is done." *Beidleman* Mem. Op. at 7

Same too with the government's empty assertion that "This motion is made in good faith, is not intended to harass the defendant, and is consistent with the public interest." ECF No. 3 at 2. This simply restates the legal principles upon which this Court determines prejudice; it is free of any discussion of those principles themselves as applied to the facts of this case, *i.e.,* "the *purpose* of the government's dismissal and the *effect* it has on the defendant." *Adams*, 777 F. Supp. 3d at 217 (emphasis in original). It is as if the government believes that stating it makes it so. It does not. *Accord Beidleman* Mem. Op. at 7.

In this case, on August 19, 2025, "federal law enforcement officials including Homeland Security Investigations '(HSI') Special Agents ('SA')" were patrolling Columbia Heights Metro Station. *See* ECF No. 1-1 at 1. Several had their faces and heads covered completely, *see id.* &

Zeteo, *Watch D.C. Residents Push ICE Out Of Their Streets*, YouTube (Aug. 19, 2025)[2], a trend many call "deeply disturbing"[3] and a move "toward militarization that serves to instill fear and stifle dissent."[4] Video from the day shows multiple officers wearing vests labeled "HSI," "police," and "special agent" moving up and down escalators repeatedly, with residents remarking on the tax dollars being spent to send them riding up and down the escalators. *Watch D.C. Residents Push ICE Out Of Their Streets*, YouTube.

[2] Available at https://youtube.com/shorts/99A29n-8nVA?si=ofNDXZPua6gJeU57 (last accessed Oct. 3, 2025).

[3] Martin Kaste, Lawmakers seek to ban federal agents from wearing masks, NPR (Jul. 25, 2025), available at https://www.npr.org/2025/07/25/nx-s1-5480219/lawmakers-ban-federal-immigration-agents-masked (last accessed Oct. 2, 2025).

[4] Allie Preston, *Masked and Unidentifiable: The Risks of Federal Law Enforcement Operating Without Identification,* Center for American Progress (Aug. 28, 2025), available at https://www.americanprogress.org/article/masked-and-unidentifiable-the-risks-of-federal-law-enforcement-operating-without-identification/ (last accessed Oct. 2, 2025).

*Id.* Eventually they surround a single man, and when asked why the individual was being detained, state, "He failed to pay his fare." *Id.* This raised questions: "Why is the FBI here for fare evasion? Why is Homeland Security here for fare evasion?" *Id*. An officer replies, "They're here supporting everybody in DC with the same focus." *Id.* In addition to those confronting their presence inside the station, a large crowd of residents had gathered outside, with cheers breaking out when the officers, several in unmarked vans and pickup trucks, withdrew from the area. *Id.* Sometime during these events, Jose Lagunas allegedly spit on one agent's neck. ECF No. 1-1 at 1.

Then, on August 25, 2025, more federal officers patrolled our metro stations: "Fort Totten Metro Station . . . was the site of a presidential enforcement task force operation," which included "Homeland Security Investigations (HSI) agents and federal agents from multiple agencies." *See* Ex. 2, 2025 CMD 10147 Gerstein at 1. "During the arrest of another individual"—available documents do not include for what—Jose Lagunas allegedly "shouted profanities" at officers and "threatened to spit on a Metro Transit Police Supervisor[.]" *Id.*

After these events, the government first filed charges against Jose Lagunas in D.C. Superior Court on August 25, 2025. *See* Ex. 1, 2025 CMD 10147 Docket. They were charged with threats to do bodily harm and assault on a police officer. *Id*. Then, on August 27, 2025, Jose Lagunas was again charged, this time in Federal Court, with assaulting certain officers under 18 U.S.C. § 111(a). *See* ECF No. 1. Then, on September 18, 2025, the government moved to dismiss the federal case without prejudice after "determin[ing] that the interests of justice favor prosecution in D.C. Superior Court over continued federal prosecution." ECF No. 3 at 2.

This timeline makes clear that the government is simply seeking a more advantageous position, whether it be here, D.C. Superior Court, or here again if that becomes favorable. But

"the government is not free to indict, dismiss, and reindict solely to achieve a more favorable prosecutorial posture." *United States v. Fields*, 475 F. Supp. 903, 908 (D.D.C. 1979). In fact, this strategic use of dismissal without prejudice is just what Rule 48 prohibits. *See Pitts*, 331 F.R.D at 201 ("[b]ecause dismissal without prejudice constitutes a strategic use of Rule 48 prohibited under District of Columbia Circuit precedent…and objectively amounts to prosecutorial harassment, the Court will dismiss the indictment with prejudice"); *United States v. Simmons*, Case No. 18-cr-344 (EGS), 2022 WL 1302888 at *19 (D.D.C. May 2, 2022) (Sullivan, J.) ("Courts have found that government conduct constitutes harassment if the reason for the dismissal is to gain a tactical advantage."). The government is seeking leave to keep open the option of refiling a federal complaint at some later time—perhaps when a new grand jury is empaneled that, unlike the current one, does not repeatedly reject the government's weak cases. Doing so "would objectively amount to harassment" by allowing "the prosecutor to dismiss charges but nevertheless keep them in abeyance for an indefinite period of time in the hope of expectation that something will turn up to remove the complications" of the initial prosecution. *Poindexter*, 719 F. Supp. at 11. Courts should not dismiss charges without prejudice to permit the government to "'*commence[] another prosecution at a different time or place deemed more favorable to the prosecution.*'" *Id.* (emphasis in original) (quoting *Ammidown*, 497 F.2d at 620). "[S]uch a strategy of dismissing a case without prejudice in order to bring it again under more advantageous circumstances is precisely the kind of tactical situation that is prohibited by Rule 48(a) and its progeny." *United States v. Borges*, 153 F. Supp. 3d 216, 220 (D.D.C.) (quotation marks omitted); *Salinas*, 693 F.2d at 353.

      Indeed, the Fifth Circuit has found dismissal with prejudice appropriate where the

government sought dismissal without prejudice simply to bring the charges before a different jury. *Salinas*, 693 F.2d 348. In *Salinas*, the Fifth Circuit held that where the government sought dismissal because "[t]he government was simply displeased with the selected jury," the government could not retain the right to bring the charges again and get a second bite at the apple of picking a jury. *Id.* Similarly, the government here is seeking the ability to hold the charges in abeyance indefinitely to someday, perhaps, try their hand with another grand jury should their maneuverings in D.C. Superior Court not work. Given the gate-keeping function the leave of court requirement serves, when deciding whether to grant leave to dismiss under Rule 48, a court cannot simply "rubber stamp [ ] the prosecutor's decision." *Ammidown*, 497 F.2d at 622.

Protecting the defendant from "prosecutorial harassment, *e.g.*, charging, dismissing, and recharging," must be the court's "primary" consideration when deciding whether to grant the government leave to dismiss post-indictment. *Rinaldi*, 434 U.S. at 30 n.15; *see also United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965). "The harassment to which [Jose Lagunas] is exposed by a dismissal without prejudice is not that [they] may be prosecuted in one court rather than the other. It is that [they] could be caught in a cycle of the Government repeatedly 'charging, dismissing, and recharging' [them] in federal and local court 'over [their] objection' while [they are] denied [their] constitutional and statutory right to a speedy trial and an opportunity to prove [their] innocence." *Beidleman* Mem. Op. at 8 (quoting *Rinaldi*, 434 U.S. at 29 n.15). This "prospect of reindictment" cannot be permitted to "hang[] like the proverbial Sword of Damocles over the accused." *Adams*, 777 F. Supp. 3d at 216.

Several courts in this district have dismissed cases with prejudice to avoid similar government attempts to obtain a tactical advantage. *See, e.g., Pitts*, 331 F.R.D. 199 (dismissing

with prejudice where government failed to timely obtain DNA testing consistent with court's discovery order and sought dismissal to obtain testing and bring charges again); *Borges*, 153 F. Supp. 3d at 220 (D.D.C. 2015) (dismissing with prejudice where government sought dismissal without prejudice in the hope that witness problem would later be cured); *Poindexter*, 719 F. Supp. 6 (dismissing with prejudice charges government sought to dismiss without prejudice because classified information precluded presentation of evidence). Just yesterday, Judge Sooknanan did just that in a similar § 111(a) case brought in both Federal and D.C. Superior Courts. *See generally Beidleman* Mem. Op., Case No. 25-cr-270 (SLS).

What is more, the unusual circumstances of this case amid a spate of similar cases support dismissal with prejudice. *Borges*, 153 F. Supp. at 220 (finding dismissal with prejudice warranted where facts unusual and unlike typical cases). Dismissal with prejudice is particularly appropriate where "the "integrity of the government's case has been tainted." *Id*. Here, there is the troubling pattern of which this case is just one example: a "charge first, ask questions later" mentality at the U.S. Attorney's Office, where they are first "filing these charges and [only] investigating them after they're filed." Dave Jamieson, *Jeanine Pirro's Cases Keep Falling Apart, And The Judges Have Had Enough*, HuffPost (Sep. 18, 2025).[5] In fact, the frequency of "no-bills" by grand juries in recent weeks demonstrates just how unusual this entire recent surge in unwinnable cases is. Scott MacFarlane, *D.C. grand jurors reject latest wave of Justice Dept. indictment requests*, CBS News (Sept. 3, 2025) (describing multiple former AUSAs who have

[5] Available at https://www.huffpost.com/entry/jeanine-pirro-prosecutions-judges_n_68cc25bbe4b0aa8d99feaa32 (last accessed Oct. 1, 2025).

never seen a grand jury reject the government's indictment);[6] Carrie Johnson, *As Trump cracks down on D.C. crime, grand juries emerge as a check on overreach*, NPR (Sept. 5, 2025) (describing the same).[7] This Court should dismiss this case with prejudice to protect Jose Lagunas from harassment and send a clear message that the current charge first, investigate later process is contrary to the manifest public interest.

**III. Jose Lagunas's records related to their federal charge should be expunged.**

There is simply no justifiable reason to harm Jose Lagunas any further by allowing a questionable federal charge to remain on their record. "Courts have the inherent, equitable power to expunge arrest records." *Livingston v. United States Department of Justice*, 759 F.2d 74, 78 (D.C. Cir. 1985). This is true where there is an "unlawful … arrest" and where "equitable considerations" support it. *United States v. McKnight*, 33 F. Supp. 3d 577, 581 (D. Md. 2014) (noting that "the courts clearly have ancillary jurisdiction to expunge records of unlawful … arrests," while expunging arrest record where individual completed pretrial diversion program using its equitable discretion to "manage its proceedings, vindicate its authority, and (in particular) effectuate its decrees." (internal quotations omitted)).

As one court explained:

> In the absence of a specific denial of power, this court may fully effectuate its jurisdiction and do complete justice in the cases before it. *Morrow v. District of Columbia,* [] 417 F.2d 728, 737-738 [(D.C. Cir. 1969)]. *Cf.*, 28 U.S.C. § 1651 (All Writs Statute). This plenary power undoubtedly includes the authority to order expunction of criminal records where circumstances demand such action. *Menard v. Mitchell*, [] 430 F.2d 486 ([D.C. Cir.] 1970); *Kowall v. United States*, 53 F.R.D. 211, 213 (W.D. Mich. 1971) (expunction ordered in connection with granting relief

---

[6] Available at https://www.cbsnews.com/news/d-c-grand-jury-reject-justice-dept-indictment-requests/ (last accessed Oct. 1, 2025).

[7] Available at https://www.npr.org/2025/09/05/nx-s1-5526925/as-trump-cracks-down-on-d-c-crime-grand-juries-emerge-as-a-check-on-overreach (last accessed Oct. 1, 2025).

> under 28 U.S.C. § 2255); *United States v. Kalish,* 271 F.Supp. 968 (D.P.R. 1967). . . . Expunction has generally been ordered where the arrest was without probable cause, *Menard v. Mitchell*, *supra*, for harassment, or where there are extraordinary circumstances such as mass arrest. *See, e.g., Wheeler v. Goodman*, 306 F.Supp. 58, 65-66 (W.D.N.C. 1969).

*United States v. Bohr*, 406 F. Supp. 1218, 1219 (E.D. Wis. 1976) (granting expungement where the court dismissed the indictment upon the filing of a motion to quash).

Just as dismissal is in the interests of justice, so too is expungement wholly appropriate in these extraordinary circumstances. As in *McKnight* and *Bohr*, "[Jose Lagunas's] case never reached the trial stage[,]" and "[w]ithout subsequent proceedings, expunction of the [] arrest records would be a simple and brief matter." *Bohr*, 406 F. Supp. at 1219. Moreover, the balance of equities is clearly in Jose Lagunas's favor. They teach 11th and 12th grades at Paul Public Charter School as part of the Teach for America program, "a leadership development organization for those who want to co-create a more just world alongside young people in their communities."[8] They missed two days of school due to their arrest. And having this case remain on their record could impinge on their ability to continue with the Teach for America program in the future, despite the important and dedicated work they are doing in the classroom. Indeed, "[t]he potential that improper inferences will be drawn from arrest records is significant." *Id.* at 1220 (citing *Morrow v. District of Columbia,* supra, at 742; *Menard v. Mitchell,* supra, at 491). Jose Lagunas's arrest also led to anxiety and stress and physical and emotional pain. They fear the repercussions for future employment and to their reputation from a federal charge on their record. As Jose Lagunas explained to counsel, "I am going to therapy as this entire series of

[8] Teach of America, *What is Teach For America?*, available at https://www.teachforamerica.org/about (last accessed Oct. 2, 2025).

events has changed me forever." There is simply no valid interest that the government or the public has in maintaining access to records that impugn Jose Lagunas with the federal charge of assault on a police officer, while threatening current and future livelihoods and emotional wellbeing, all for a case the government itself claims is better pursued in another venue.

Expungement is even more appropriate in a climate where Jose Lagunas is not the only defendant to be charged and then have the charges dismissed "after further reflection, often the night before the defendant was due in court." Dave Jamieson, *Jeanine Pirro's Cases Keep Falling Apart, And The Judges Have Had Enough.* Theirs are one of at least a dozen such cases—a number seemingly climbing higher every day—that began with baseless federal charges, a situation "in service of promoting Trump's crackdown politically" and not based in law or fact. *Id.*; *see also* Dave Jamieson, *How 'Horseshit' Criminal Cases Help Trump Hype His DC Police Takeover*, HuffPost (Aug. 28, 2025).[9] This situation is sadly reminiscent of other unlawful mass arrest records that the D.C. Circuit has ruled were entirely proper to expunge.

In *Sullivan v. Murphy*, the appellate court underscored the following concerns, among others, that meant expungement was appropriate: (1) the police records were the product of a process that did not "provide protection against arrest records made without basis in fact"; (2) "the very presence of [the] records carrie[d] the strong implication that the underlying arrest and detention were somehow justified"; and (3) "[t]o the extent that the action of the police officer calling for the arrest reflected considerations other than bringing lawbreakers to book, the inference that would naturally be drawn from these records is unwarranted." 478 F.2d at 969. So

[9] Available at https://www.huffpost.com/entry/trump-dc-police-takeover_n_68b08bece4b0d087ed3f2b3c (last accessed Oct. 1, 2025).

too here. The process through which police and the U.S. Attorney's Office are bringing federal charges fails to "provide protection" that the charge is based in fact; these records' very existence create "the strong implication" that they were "justified"; and yet because they are a product of a charge first, investigate later mentality, the implication of a justified arrest for a federal offense is "unwarranted." Expungement of Jose Lagunas's case is therefore appropriate and just.

## IV.  Conclusion

For the foregoing reasons and any other reasons the Court deems appropriate, the Court should dismiss the charges against Jose Lagunas with prejudice and expunge their record.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

*/s/ Joanna Munson Perales*
JOANNA MUNSON PERALES
Research & Writing Attorney
625 Indiana Ave NW, Suite 550
Washington, D.C. 20004
(202) 208-7500
Joanna_Perales@fd.org

15